UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRANSPORT SYSTEMS, LLC,

    Plaintiff,                      Case No. 18-CV-11286

vs.                                   HON. GEORGE CARAM STEEH

AMAZON,

    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (Doc. 35)**

Plaintiff Transport Systems filed this diversity action for breach of contract, claim and delivery, conversion, and unjust enrichment under Michigan law against Defendant Amazon relating to an allegedly lost trailer. Defendant's motion for summary judgment is now before the court. Because Plaintiff lacks standing, Defendant's motion for summary judgment shall be GRANTED.

**I. Factual Background**

Plaintiff is a motor carrier company that owns approximately 130 trailers and approximately 30 cabs. (Doc. 38, Ex. A at PgID 366). Transport Systems is a company wholly owned by Ali Saleh and his wife. (Doc. 38, Ex. A at PgID 367). Ali Saleh is also the sole owner of Sure Express, LLC ("Sure Express"). (Doc. 38, Ex. D at PgID 400).

Plaintiff brought this suit against Defendant arising out of the alleged loss of a 2016 Vanguard trailer (VIN 5V7VC5326GM607804) which it identifies as trailer No. 4029 (the "Trailer"). It is undisputed that Plaintiff does not own the Trailer in question. (Doc. 38, Ex. A at PgID 378). The title holder is Sure Express. (Doc. 35-1, Ex. B at PgID 277). Ali Saleh acknowledged this fact at his deposition. (Doc. 38, Ex. A at PgID 378). During that deposition, Mr. Saleh testified that Plaintiff entered into a lease agreement for the Trailer but neither that lease nor any other agreement was ever produced during discovery. Further, no evidence of monthly payments or other forms of reliance were produced nor any evidence that Plaintiff paid for the use, maintenance, or repair of the Trailer. (Doc. 38, Ex. A at PgID 380). Sure Express is not a party to this action.

According to the scheduling order, Plaintiff had until October 31, 2018 to file a motion for leave to amend the complaint to substitute the correct party plaintiff, Sure Express. (Doc. 15). Plaintiff failed to comply with the filing deadline. (Doc. 41, PgID 424). On February 28, 2019, Defendant filed a motion for summary judgment arguing in part that Plaintiff had no standing to sue because it did not own the Trailer in question. (Doc. 35). Plaintiff waited an additional two weeks before finally filing a motion for leave to amend on March 19, 2019, without including a reason for the

delay. (Doc. 41, PgID 424). Magistrate Judge Patti denied Plaintiff's untimely motion to amend, noting, the "determination of the proper entity plaintiff was not difficult and should have been made before this lawsuit was filed." (Doc. 41, PgID 424). Magistrate Judge Patti allowed Plaintiff the opportunity to file additional briefing in opposition to Defendant's motion for summary judgment, but Plaintiff failed to do so. (Doc. 42, PgID 426).

## II. Standard of Law

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will

a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

### III. Analysis

A.  Breach of Contract Claim

Count II alleges breach of contract. Defendant argues it cannot be liable for breach of contract because the parties are not now, and never have been, parties to any contract or written agreement with each other regarding the transportation of Defendant's goods. Plaintiff conceded this issue in its responses to Defendant's first set of "Requests for Admission," and further waived the issue in its response to Defendant's motion for summary judgment. (Doc. 38, PgID 353). Accordingly, Count II shall be dismissed.

B.  Article III Standing

The other three claims for claim and delivery, conversion, and unjust enrichment (Counts I, III, IV) remain. Defendant argues that it is entitled to summary judgment on these claims based on Plaintiff's lack of standing to sue. It is undisputed that Plaintiff does not own the Trailer. "When jurisdiction is premised on diversity of citizenship, a plaintiff must have

standing under both Article III and state law in order to maintain a cause of action." *Morell v. Star Taxi*, 343 F. App'x 54, 57 (6th Cir. 2009).

Article III standing requires three elements. The three constitutional requirements for standing are "(1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury will likely be redressed by a favorable decision." *Barnes v. City of Cincinnati,* 401 F.3d 729, 739 (6th Cir. 2005) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)). The first element requires that the plaintiff must have suffered an injury arising from the "invasion of a legally protected interest." *Macy v. GC Servs. Ltd. P'ship,* 897 F.3d 747, 752 (6th Cir. 2018) (quoting *Lujan*, 504 U.S. at 560). In addition, a plaintiff must also satisfy three prudential standing requirements. *City of Cleveland v. Ohio,* 508 F.3d 827, 835 (6th Cir. 2007). Significantly, the first of those factors requires that a plaintiff must "assert [its] own legal rights and interests, and cannot rest [its] claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. 490, 499 (1975) (internal citations omitted). "These additional restrictions enforce the principle that, 'as a prudential matter, the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted.'" *Coal Operators & Assocs., Inc. v. Babbitt,* 291 F.3d 912, 916 (6th Cir. 2002) (quoting *Pestrak*

v. *Ohio Elections Comm'n,* 926 F.2d 573, 576 (6th Cir. 1991)). Here, Plaintiff has failed to show a legally protected interest in the Trailer; thus, it fails to satisfy the first prong of the *Lujan* test.

Defendant argues that Plaintiff's claims for conversion, claim and delivery, and unjust enrichment all require an ownership interest in the property, which is lacking here. (Doc. 35, PgID 266). In response, Plaintiff argues that it has an equitable interest in the Trailer because it paid for the use, maintenance, and repair of the Trailer. (Doc. 38, PgID 355-56). Despite repeated assertions, however, Plaintiff provided no documentary evidence that it did indeed make any payments on the Trailer.

Plaintiff relies on *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.,* 497 Mich. 337 (Mich. 2015), for the proposition that it has standing based on its alleged equitable interest in the Trailer. However, in that case, there was no question that the plaintiff importer and distributor was the rightful owner of the wine that the defendant was alleged to have converted by failing to store it in a climate-controlled environment. *Id.* at 340-41. That case held that conversion includes "any distinct act of dominion wrongfully exerted over another's personal property." *Id.* at 351-52. Here, unlike the conversion at issue in *Aroma Wines,* Plaintiff has not put forth any evidence that the Trailer was its personal property.

Black's Law Dictionary defines personal property as, "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." *Personal Property*, Black's Law Dictionary (11th ed. 2019). Delving further, ownership is defined by Black's Law Dictionary as, "[t]he bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others," and "[ownership] implies the right to possess a thing, regardless of any actual or constructive control." *Ownership*, Black's Law Dictionary (11th ed. 2019). Based on these definitions, Plaintiff does not enjoy ownership of the Trailer.

Plaintiff's citations to other case law and Michigan statutes, are also unpersuasive. Plaintiff relies on *Batton-Jajuga v. Farm Bureau Gen. Ins. Co. of Mich.,* 322 Mich. App. 422, 425 (2017), which recognized that a land vendee who had executed and made payments on a land contract became an equitable owner. Unlike the facts of that case, Plaintiff had no interest in Sure Express and provided no evidence of an agreement. Ali Saleh, who is not the Plaintiff, owned the interest in Sure Express. (Doc. 35-1, Ex. B at PgID 277).

Plaintiff also relies on several statutes addressing equitable ownership interests. For example, Plaintiff relies on (1) M.C.L. § 600.2932(5), which governs the determination of land benefits, (2) M.C.L. §

324.80103(i), a definitions page under the Natural Resources and Environmental Protection Act, and (3) M.C.L. § 440.8510, a provision of Michigan's Uniform Commercial Code.  Although these statutes recognize that ownership interests may be equitable in nature, they are of no help to Plaintiff here, as it has come forward with no evidence to suggest that it has an equitable interest in the subject Trailer.  The final two provisions Plaintiff cites, (1) M.C.L. § 257.1302, a definitions page of the Motor Vehicle Service & Repair Act, and (2) M.C.L. § 554.1012, the definitions page of the Michigan Uniform Commercial Real Estate Receivership Act, do not even include subsections that identify the term "equitable interest" or an obvious equivalent.  In sum, none of the statutes Plaintiff relies upon are sufficient to establish Article III standing as to its claims for claim and delivery, conversion, or unjust enrichment as it lacks an ownership interest, equitable or otherwise, in the subject Trailer.

## IV. Conclusion

Because Plaintiff lacks standing, Defendant's motion for summary judgment (Doc. 35) is GRANTED.

Dated:  August 6, 2019

                                        s/George Caram Steeh
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 6, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk